NORRED LAW, PLLC
Clayton L. Everett, State Bar No. 24065212
515 E. Border Street | Arlington, Texas 76010
Telephone: (817) 704-3984 | clayton@norredlaw.com
Proposed Counsel for Advent Air Conditioning, Inc.

# United States Bankruptcy Court
## Northern District of Texas
### Fort Worth Division

| | |
|---|---|
| **In re:**<br>**Advent Air Conditioning, Inc.**<br>1560 E. Southlake Blvd.<br>Southlake, TX 76092<br>EIN: 75-1935949<br><br>**Debtor** | **Case No. 26-44777-mxm11**<br><br>**Chapter 11**<br><br>**Subchapter V Case**<br><br>**Emergency Hearing Requested on or before October 29, 2026** |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) DIRECTING RELEASE OF ESTATE FUNDS HELD BY PAYMENT PROCESSOR, (IV) AUTHORIZING PAYMENT OF PREPETITION WAGES, PAYROLL TAXES, AND BENEFITS, AND (V) SCHEDULING A FINAL HEARING**

TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:

Advent Air Conditioning, Inc. (the "Debtor" or "Advent") files this emergency motion (the "Motion") under 11 U.S.C. §§ 105(a), 361, 362, 363(b), 363(c), 363(e), 507(a)(4) and (5), 541, 542, 544, and 552, and Federal Rules of Bankruptcy Procedure 4001(b), 6003, 6004, and 9014. The Debtor asks for entry of an interim order, substantially in the form filed with this Motion (the "Interim Order"), and later a final order, that:

1. Authorize the Debtor to use cash collateral under the budget attached as **Exhibit A** (the "Budget");

2. Grant adequate protection to parties asserting an interest in cash collateral, to the extent of any valid interest;

3. Direct Stripe, LLC ("Stripe") and Codefied, Inc. d/b/a Housecall Pro ("Housecall Pro") to release to the Debtor's operating account at Bank of Texas ending in 4948 (the "Operating Account") the estate funds now being held on the Debtor's payment account at the request of Lawrence Funding Group ("LFG");

4. Authorize the Debtor to pay prepetition wages and related employee obligations, and to remit withheld payroll taxes and deductions (the "Wage Relief"); and

5. Schedule a final hearing.

**Concise Statement Under Bankruptcy Rule 4001(b)(1)(B)**

| Material term | Proposed treatment | Interim Order |
|---|---|---|
| Parties with an interest in cash collateral | Wells Fargo Commercial Distribution Finance, LLC; Wells Fargo Bank, N.A.; Trane U.S. Inc. (limited to proceeds of Trane-financed inventory); the funders for whom Financial Agent Services and C T Corporation System filed as representatives; Millstone Funding Inc.; and LFG (no financing statement naming LFG has been found). Validity, priority, and extent are not determined. | Findings ¶ 4 |
| Purposes | Payroll and payroll taxes (including the prepetition employee obligations described in Part III.F), rent, insurance, materials, vehicle rentals, and other operating expenses in the Budget. Current payroll taxes are deposited weekly; past-due prepetition payroll taxes will be paid under the plan | ¶ 1 |
| Duration | Interim, through the final hearing | ¶¶ 1, 10 |
| Budget variance | 10% per line item, as in the Debtor's prior case | ¶ 1 |
| Adequate protection | Replacement liens on postpetition accounts, cash, and accounts receivable and their proceeds, to the extent of any diminution in value, with the same validity, priority, and extent as the prepetition interest. No lien on avoidance actions. Monthly reporting. Carve-out for Subchapter V Trustee fees (up to $1,000 per month) and court-approved professional fees. | ¶¶ 5, 7–8 |
| Release of held funds | Stripe and Housecall Pro to remit the Held Funds (about $93,813) to the Operating Account within one business day, to be accounted for separately within one business day. Use only for Budget | ¶¶ 2–3 |

| | | |
|---|---|---|
| | expenses that postpetition receipts do not cover, until a final hearing. | |
| LFG directive | LFG to withdraw its notices to processors within one business day | ¶ 4 |
| Reservation of rights | All challenge rights preserved. No stipulation to the validity of any lien, no § 506(c) or § 552(b) waiver, and no cross-collateralization. | ¶ 9 |

## I. Jurisdiction and Venue

6. The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (M), and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## II. Background

### The Debtor and the case

7. On October 27, 2026 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 and elected to proceed under Subchapter V. The Debtor continues to operate its business as debtor-in-possession under 11 U.S.C. §§ 1182(2) and 1184.

8. Advent is a Texas corporation that has provided residential and commercial HVAC installation and service in the Dallas–Fort Worth area for more than 30 years. It employs 12 people. Its gross revenue was about $1.96 million in 2025 and about $1.59 million in 2026 through the Petition Date.

9. Most of Advent's customer payments are card and electronic payments processed through the Housecall Pro field-service platform. Housecall Pro provides payment processing through a Stripe account in Advent's name, Stripe account ID acct_1QdHq2EOGEBHPckv (the "Payment Account").

10. Advent previously filed a Subchapter V case, No. 25-41696-mxm11, on May 9, 2025. That case was dismissed without prejudice on the Debtor's motion on March 6, 2026. Since then,

Advent's corporate status has been reinstated, the Texas Comptroller's priority claims have been paid, the DeChambeau/MRCH arbitration has been settled, and Advent has reduced its fleet and facility costs.

**The LFG agreement**

11. On May 14, 2024, Advent signed a "Revenue Purchase Agreement" with LFG (the "LFG Agreement"). Under it, LFG paid a purchase price of $100,000 for a "purchased amount" of $149,900, collected through fixed weekly ACH debits of $7,979.79. A redacted copy is in the Appendix filed with this Motion.

12. The LFG Agreement includes a security interest in all of Advent's assets, a personal guaranty, a confession-of-judgment authorization, a 100% sweep of receipts on default, a $5,000 default fee, and a 33% attorney's-fee assessment.

13. LFG's own payment history shows five payments totaling $39,898.95 and an ACH stop-payment return on June 27, 2024. That leaves about $110,001 of the purchased amount. LFG now claims $136,376.31.

14. A search of the Texas Secretary of State's UCC records on October 26, 2026, by the Debtor's name, revealed no financing statement naming LFG as secured party. Two active financing statements, filed November 13, 2023 and April 18, 2024, name filing agents (Financial Agent Services and C T Corporation System) as secured parties "as representative" for undisclosed principals. The April 18, 2024 statement also names Advent's principal, Jared Douglas, as a debtor. The Debtor has asked the filing agents and LFG to identify those principals. It is not aware that either statement was filed for LFG.

**The Stripe hold**

15. Beginning in early October 2026, LFG's counsel, Madeb Law, PLLC, demanded payment from Advent and threatened to place additional liens on Advent's business. LFG then caused Stripe and/or Housecall Pro to stop paying out Advent's receipts. LFG's counsel confirmed in writing that LFG placed the hold.

16. The held balance has grown each week as customer payments continue to come in: about $42,000 on October 12, about $80,000 on October 16, $90,583 on October 21, and $93,813 on October 26 (the "Held Funds").

17. On October 27, 2026, the Debtor gave written notice of the bankruptcy filing to LFG, its counsel, Stripe, and Housecall Pro. The Debtor demanded that LFG withdraw its instructions. Debtor's counsel has not had any response from LFG, its counsel, Stripe, or Housecall Pro as of the time of this motion.

**Parties that may assert an interest in cash collateral**

18. The Debtor's UCC search shows the following active financing statements. The Debtor lists them for notice purposes only. It does not concede the validity, priority, or extent of any lien or interest, or that any debt is owed.

| **Filed** | **Secured party of record** | **Collateral described** |
|---|---|---|
| 07/20/1992 (restated 2017); 10/01/2002 | Trane U.S. Inc. | Inventory financed by Trane, and proceeds of that inventory |
| 10/25/2013 | Wells Fargo Commercial Distribution Finance, LLC (formerly GE CDF) | All personal property and proceeds |
| 05/16/2022 | Wells Fargo Commercial Distribution Finance, LLC and Wells Fargo Bank, N.A. | All personal property and proceeds |
| 11/13/2023 | Financial Agent Services, as representative | Accounts, chattel paper, general intangibles, and instruments |
| 04/18/2024 | C T Corporation System, as representative | Receivables and all assets |
| 07/15/2024 | Millstone Funding Inc. | All assets and proceeds |

| | | |
|---|---|---|
| None | Lawrence Funding Group | None found naming LFG (see ¶¶ 9, 19) |

**The Debtor's immediate need**

19. As of the Petition Date, Advent had about $15,600 in its bank accounts and on hand. Its next payroll, for 12 employees covering October 19–25, 2026, is payable Friday, October 30, 2026. Advent's payroll provider, Paylocity, must receive the funds by wire before 3:00 p.m. on Thursday, October 29, 2026. That payroll requires about $15,400 in net wages, withheld taxes, deductions, and employer taxes. The Budget, attached as Exhibit A, shows projected receipts and disbursements for the first 14 days, the first month, and the first three months of the case. Advent cannot meet payroll and other near-term obligations while its card receipts remain frozen on the Payment Account.

## III. Basis for Relief

**A. Use of cash collateral is authorized with adequate protection**

20. A debtor-in-possession may not use cash collateral unless each entity with an interest consents or the Court authorizes the use. 11 U.S.C. § 363(c)(2). On request, the Court must condition use on adequate protection of any such interest. 11 U.S.C. § 363(e). Adequate protection may take the form of replacement liens. 11 U.S.C. § 361(2). It protects only against a decline in the value of the creditor's interest during the case.

21. Advent's receivables are generated by continued operations. Using cash to pay employees, buy materials, and keep crews in the field preserves the value of whatever interest any creditor holds, because it is the source of new receivables. The Debtor offers each party with a valid interest a replacement lien on postpetition assets of the same type, to the extent of any diminution in value. The lien would have the same validity, priority, and extent as the prepetition

interest. The Debtor also offers monthly reporting of receivables, income statements, budget-to-actual results, and proof of insurance. That is adequate protection.

**B. Postpetition receipts are not subject to prepetition liens**

22. Under 11 U.S.C. § 552(a), property the estate acquires after the Petition Date is not subject to a lien arising from a prepetition security agreement. The only exception, in § 552(b), is for proceeds of prepetition collateral. Receivables from work Advent performs after the Petition Date are new estate property. The Debtor asks the Court to confirm at the final hearing that those receipts are not subject to any prepetition lien, except to the extent of the replacement liens granted as adequate protection.

**C. LFG's interest is unperfected or, at most, junior**

23. Whether the LFG Agreement is a loan or a sale of receivables, LFG's interest is governed by Article 9. A sale of accounts or payment intangibles is within Article 9 and must be perfected by filing. Tex. Bus. & Com. Code §§ 9.109(a)(3), 9.310(a). The limited automatic-perfection exception for assignments of an insignificant part of a debtor's accounts does not apply. Id. § 9.309(2).

24. The Debtor has found no financing statement filed by or for LFG. If none exists, LFG's interest is subordinate to the rights of a lien creditor, id. § 9.317(a)(2), and avoidable under 11 U.S.C. § 544(a), which the Debtor may exercise under § 1184. If LFG instead claims perfection through one of the representative filings described in paragraph 9, its interest is still junior under the first-to-file rule. It would rank behind every earlier-filed secured party, including Wells Fargo (2013 and 2022) and, as to the April 2024 filing, the November 2023 representative filing. Id. § 9.322(a)(1). Either way, LFG has no right to freeze all of Advent's receipts ahead of senior claimants, and the separate-accounting and replacement-lien provisions of the Interim Order

fully protect whatever interest it does hold. The Debtor reserves the right to bring an avoidance action, to challenge the authorization and effectiveness of any representative filing LFG may assert, and to seek recharacterization of the LFG Agreement as a loan.

**D. The Held Funds are estate property and must be released**

25. The Debtor's right to payment of the Held Funds is property of the estate. 11 U.S.C. § 541(a)(1). An entity that owes a debt that is property of the estate and is matured, payable on demand, or payable on order must pay that debt to the debtor-in-possession, except to the extent of a valid setoff. 11 U.S.C. § 542(b). An entity in possession of property the debtor-in-possession may use under § 363 must deliver it. 11 U.S.C. § 542(a).

26. The automatic stay bars any act to obtain possession of or exercise control over estate property, and any act to collect a prepetition claim. 11 U.S.C. § 362(a)(3), (6). LFG's continued instruction to hold Advent's receipts is such an act.

27. The Debtor does not ask the Court to decide at the interim hearing who ultimately prevails among competing claimants to the Held Funds. It asks for a narrower, protective order:

- Stripe and Housecall Pro remit the Held Funds to the Operating Account within one business day, to be accounted for separately.
- Any valid interest in the Held Funds attaches to those funds with the same validity and priority it has today.
- The Debtor uses only what the Budget requires until the final hearing.
- Stripe and Housecall Pro keep any ordinary-course rights for chargebacks, refunds, and processing fees on transactions processed for the Debtor.

This relief preserves every party's position while letting the Debtor make payroll. To the extent any party contends that an adversary proceeding is required under Rule 7001, the Debtor asks the

Court to enter the interim protective relief under §§ 105(a) and 363 pending that proceeding. The Debtor will promptly file a complaint if needed.

**E. Interim relief is needed to avoid immediate and irreparable harm**

28. Under Bankruptcy Rule 4001(b)(2), the Court may authorize interim use of cash collateral before a final hearing to the extent necessary to avoid immediate and irreparable harm to the estate. Without access to its cash and receipts, Advent cannot fund its October 30 payroll, which Paylocity must receive by 3:00 p.m. on October 29. It would lose its workforce and its ability to service customers, which would destroy the going-concern value that is the source of any recovery for creditors. The Debtor requests interim use only in the amounts in the Budget through the final hearing.

29. The Debtor requests a final hearing no earlier than 14 days after service of this Motion, as Rule 4001(b)(2) requires, and an objection deadline before it.

**F. The Court should authorize payment of prepetition wages and related obligations**

30. Advent employs 12 people, whom it pays weekly by direct deposit through Paylocity. Each weekly payroll totals about $14,331 in gross wages, consisting of about $11,452 in net pay, $2,024 in withheld employee taxes, and $855 in benefit and other deductions, including a child-support withholding. Advent also owes about $1,042 in employer payroll taxes each week.

31. The case was filed at 1:47 p.m. on Tuesday, October 27, 2026. The entire payroll payable October 30, for work performed October 19–25, is therefore a prepetition obligation, as is the part of the November 6 payroll for work performed through the Petition Date. The Debtor estimates these prepetition wages at about $18,600 in gross wages, plus the related withholdings, deductions, and employer taxes (together, the "Prepetition Employee Obligations"). No

employee is owed more than the $17,150 priority limit of 11 U.S.C. § 507(a)(4), and the Debtor does not seek to pay any employee more than that limit.

32. Two employees are insiders. Jared Douglas, the Debtor's President and sole shareholder, earns a salary of $3,846.16 per week. Michael Douglas, a former owner of the Debtor, works part time at $38.47 per hour, or about $769.30 per week. The Debtor discloses these amounts so that the Court and parties in interest may consider them separately. If the Court prefers, the Debtor asks that the Court authorize payment to non-insider employees now and consider the insiders' prepetition wages at the final hearing.

33. Section 363(b)(1) permits the Debtor to use estate property outside the ordinary course of business after notice and a hearing, and § 105(a) permits any order necessary to carry out the Bankruptcy Code. Courts in this District have authorized payment of prepetition claims when payment is essential to preserving the debtor's going-concern value. See In re CoServ, L.L.C., 273 B.R. 487 (Bankr. N.D. Tex. 2002). The Prepetition Employee Obligations are also priority claims under § 507(a)(4) and (a)(5) that a confirmed plan must pay in full. 11 U.S.C. §§ 1129(a)(9), 1191(a). Paying them now affects only their timing, not the recovery of other creditors.

34. The withheld employee taxes and deductions are held in trust for the taxing authorities and the benefit providers and are not property of the estate. 26 U.S.C. § 7501(a); Begier v. IRS, 496 U.S. 53 (1990). Remitting them does not diminish the estate.

35. Bankruptcy Rule 6003 permits the Court to authorize payment of prepetition claims within 21 days after the petition date when necessary to avoid immediate and irreparable harm. Advent's field employees are its business. If they are not paid on October 30, the Debtor expects

to lose employees it cannot readily replace, to cancel scheduled service calls, and to lose the receivables those calls would generate. That harm would fall on every creditor.

36. The Debtor asks the Court to (a) authorize it to pay the Prepetition Employee Obligations; (b) authorize Paylocity and the Debtor's banks to honor the related wires, direct deposits, and tax deposits; and (c) waive the 14-day stay under Bankruptcy Rule 6004(h) so that the payroll can be funded by 3:00 p.m. on October 29. Nothing in this Motion assumes any employment agreement or admits that any amount is owed to a particular employee.

**Reservation of Rights**

37. Nothing in this Motion or the Interim Order is an admission of the validity, priority, extent, or amount of any claim, lien, or interest, or a waiver of any of the following:

- the Debtor's rights under §§ 506(c), 544, 547, 548, 549, 552(b), or 553;
- the Debtor's right to seek recharacterization of the LFG Agreement;
- the Debtor's right to seek sanctions for violation of the automatic stay.

**Evidence and Notice**

38. The Motion is supported by the Declaration of Jared Douglas, filed with it. The Debtor will serve this Motion and the Interim Order on:

- the United States Trustee and the Subchapter V Trustee;
- each party listed in paragraph 13;
- LFG and its counsel, Madeb Law, PLLC;
- Stripe, LLC and Codefied, Inc. d/b/a Housecall Pro;
- the Internal Revenue Service, the Texas Comptroller, and the Texas Workforce Commission;
- the 20 largest unsecured creditors;

- all parties requesting notice.

The Debtor will serve by email where available, and by overnight delivery and first-class mail. Under L.B.R. 9014-1(b), the Debtor will serve the corporate parties (including Stripe, LLC, Codefied, Inc., and LFG) under Bankruptcy Rule 7004(b)(3), addressed to an officer, managing or general agent, or registered agent, with a copy to known counsel. It will serve Wells Fargo Bank, N.A., an insured depository institution, by certified mail addressed to an officer under Bankruptcy Rule 7004(h). Given the emergency, the Debtor submits that this notice is sufficient. Because a motion to use cash collateral must be set for hearing, the negative-notice procedure is not used. L.B.R. 9007-1(h)(4).

This Motion includes the Debtor’s brief under L.B.R. 7007-1(d).

## IV. Prayer

The Debtor asks the Court to:

(a) enter the Interim Order;

(b) authorize the Wage Relief and waive the stay under Bankruptcy Rule 6004(h);

(c) set a final hearing and an objection deadline;

(d) after the final hearing, enter a final order authorizing continued use of cash collateral and confirming that postpetition receipts are not subject to prepetition liens except as provided in the order; and

(e) grant the Debtor all other relief to which it is entitled.

Dated: October 28, 2026

Respectfully submitted:

By: __/s/ Clayton L. Everett____
Clayton L. Everett
State Bar No. 24065212
clayton@norredlaw.com
NORRED LAW, PLLC
515 E. Border St.
Arlington, Texas 76010
Telephone: (817) 704-3984
Proposed Counsel for Debtor and
Debtor-in-Possession

**Certificate of Conference**

I certify that on October 27 and 28, 2026, I conferred or attempted to confer by email with the United States Trustee, the United States Attorney on behalf of the IRS, Lawrence Funding Group and its counsel, Stripe, Housecall Pro, known secured creditors and merchant cash advance lenders, the Debtor's twenty largest unsecured creditors, and counsel for certain creditors regarding the relief requested and the need for an expedited hearing.

David Adams, Assistant United States Attorney, advised that he does not oppose an expedited hearing but must consult with the IRS before taking a position on the substantive relief. The United States Trustee is reviewing the pleadings but has not stated a position. No other substantive responses have been received as of filing. Due to the emergency nature of the relief, further conferences were not practicable. The Debtor will advise the Court of any additional responses received before the hearing.

/s/ Clayton L. Everett
Clayton L. Everett

**Certificate of Service**

I certify that on October 28, 2026, a true and correct copy of this Motion and its attachments was served through the Court's CM/ECF system on all registered parties and by email on the United States Trustee, the United States Attorney, known secured creditors, affected parties, the Debtor's twenty largest unsecured creditors, and their known counsel, at the addresses available to the Debtor and identified on the attached service list.

Additionally, service by first-class mail, or certified mail where required, was made on applicable creditors and governmental entities at the addresses identified on the attached service list, in accordance with Bankruptcy Rules 7004 and 9014

/s/ Clayton L. Everett
Clayton L. Everett